1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
9                     AT SEATTLE

10   ROBERT TAYLOR,                     CASE NO. C10-2026 MJP

11                   Plaintiff,         ORDER DENYING MOTION FOR
                                        SUMMARY JUDGMENT
12        v.

13   UNITED STATES ATTORNEY
     GENERAL,
14
                    Defendant.
15

16
         This matter is before the Court on Plaintiff Robert Taylor's motion for summary
17
     judgment. (Dkt. No. 67.) The Court reviewed the motion, Defendant's response, and all related
18
     documents. Taylor did not file a reply brief. Upon full consideration of the record, the Court
19
     DENIES the motion.
20
                                      **Background**
21
         Robert Taylor, a native and citizen of Canada, first entered the United States around
22
     August 23, 1963.  (Dkt No. 1 at 2.)  He served active duty in the U.S. Armed Forces from
23

24

January 8, 1969, to December 29, 1970. (P3-L30.) [1] He was honorably discharged on January 1,

1975.  (Id.) On August 25, 1989, Taylor pled guilty to felony child molestation, felony oral

copulation with a minor, and misdemeanor annoyance/molestation of a minor, in violation of the

California Penal Code.  (Dkt. No. 1 at 2; P3-L57; P1-L258; P1-L83 to P1-L84.)  The Municipal

Court of the North Judicial District of California entered judgment on all three counts and

sentenced Taylor to 180 days incarceration for these crimes, and five years of probation.  (P3-

L51.)  Due to these convictions Taylor was placed in deportation proceedings on January 26,

1990.  (P1-R257.) After exhausting his administrative and judicial review, Taylor was repatriated

to Canada on June 21, 1994.  (Dkt. No. 1 at 2; P3-R150 to R151.)

       Shortly after Taylor's return to Canada, he was arrested and indicted upon charges of

sexual abuse of a minor under the age of 14 in violation of Criminal Code of Canada ("C.C.C.")

§ 151, and sexual assault in violation of C.C.C. § 271.  (P3-L42 to L43.)  The sexual abuse of a

minor charge under C.C.C. § 151 was later stayed, and Taylor was not convicted of this charge.

(P3-L42 to L43.)  On July 10, 1995, a British Columbia Provincial court found Taylor guilty of

sexual assault in violation of § 271 and sentenced him to 90 days in jail, and three years of

probation.  (Dkt. No. 1 at 2; P1-R258 to P1-R263.)

       In February of 2002, the National Parole Board of Canada granted Taylor's request for a

pardon for his 1995 conviction.  (P3-L78-79.)  The pardon will automatically cease if he receives

a new offense under the Criminal Code of Canada that is "punishable either by summary

conviction or by indictment, or for an offence prosecuted by indictment."  (Id.)  Additionally, the

---

[1] The Court's citation is to Petitioner's Department of Homeland Security administrative file ("A-file").  "L" and "R" citations refer to documents found on the left side or right side of Petitioner's A-file.  "P1", "P2" and "P3" citations will refer to parts one, two or three of the left or right side of Petitioner's A-file.

1  pardon "does not erase the fact that [Taylor] was convicted of an offense and has a criminal

2  record."  (Id. at L79.)

3      On February 12, 2005, Taylor filed a second N-400 Application for Naturalization, on the

4  basis of his military service.  (Dkt. No. 1 at 2; P3-L90 to P3-L101.)  The United States

5  Citizenship and Immigration Services ("USCIS") denied his application on September 5, 2007,

6  finding his 1995 conviction is an aggravated felony.  (Id.)  Taylor filed a notice of appeal with

7  the Board of Immigration Appeals ("BIA"), contending that USCIS erred in the categorization of

8  his Canadian sexual assault conviction as an aggravated felony.  The BIA upheld the ruling that

9  the conviction was an aggravated felony under § 101(a)(43) of the Immigration and Nationality

10  Act ("INA"), and thus Taylor could not meet his burden to establish he was a person of good

11  moral character.  (Dkt. No. 1 at 3.)

12      On December 15, 2010, Taylor filed a petition with the Court seeking de novo review of

13  his naturalization denial.  (Dkt. No. 1 at 1.)  Respondents (or "Government") filed a motion to

14  dismiss arguing Taylor was statutorily barred from eligibility for naturalization because his 1995

15  conviction was an aggravated felony, and that USCIS does not recognize foreign pardons. (Dkt.

16  No. 27 at 5.)  On July 13, 2011, this Court granted a motion to dismiss brought by the

17  Government, finding Taylor's petition for naturalization was statutorily barred because his 1995

18  conviction fell "within the ordinary definition of the generic crime of sexual abuse of a minor,

19  and [as such constituted] an aggravated felony under 8 U.S.C. § 1101(a)(43)." (Dkt. No. 36 at

20  13.)

21      Taylor appealed the dismissal to the Ninth Circuit. (Dkt. No. 38.) The Ninth Circuit

22  vacated and remanded, finding that because of an evidentiary limitation, Taylor's 1995

23  conviction cannot be considered an aggravated felony and his application for naturalization is not

24

1    statutorily barred on that basis. (Dkt. No. 41 at7.) The Circuit noted it expressed "no opinion

2    regarding the merits of Taylor's naturalization application, which the district court reviews de

3    novo . . . and whether Taylor demonstrates good moral character under 8  C.F.R. § 316.10(a)(2)."

4    <u>Id.</u> at 6, n.3. On May 5, 2014, Taylor filed the motion for summary judgment at issue here. (Dkt.

5    No. 67.) The Government opposes summary judgment, arguing there are disputed issues of

6    material fact as to Taylor's good moral character. (Dkt. No. 70 at 11.)

7            In its opposition to summary judgment, the Government asserts Taylor lied to

8    immigration authorities to obtain immigration benefits on several different occasions. The

9    Government alleges in November of 1995 Taylor attempted to re-enter the United States and lied

10   to the border agents about his recent deportation. (Dkt. No. 70-3 at 3.) Taylor allegedly denied

11   having been previously deported, and revealed the information only after his wife made the

12   admission. (<u>Id.</u>)  The Government asserts Taylor lied again to obtain a citizenship benefit when

13   on an application for naturalization filed in 2005 Taylor checked the box stating he had never

14   lied to any U.S. government official to gain entry or admission to the United States. (Dkt. No.

15   70-3 at 20.) Taylor stated he did not believe he ever denied his deportation to immigration

16   officials while testifying under oath during his pretrial deposition in this case. (Dkt. No. 70-4 at

17   21-22.)

18           The Government alleges several other instances of Taylor's dishonesty. For example,

19   Taylor stated in his pretrial deposition he apologized to his victims and/or their families, though

20   he could not recall when he apologized or what he said. (Dkt. No. 70-4 at 6.) As of 1990, one of

21   the victim's parents testified Taylor had not apologized or showed any remorse. (Dkt. No. 70-1

22   at 108.) The Government also points to Taylor's testimony that he never tried to pull C.W., a

23   minor, into his room and intentionally kiss him on the neck, which is contradicted by C.W.'s

24

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT- 4

1  testimony at trial. (Dkt. No. 70-4 at 14-15.) The government further contends Taylor gave

2  testimony that is not credible regarding his 1972 arrest and the molestation of J.B., another

3  minor. (Dkt. No. 70 at 23-24). The Government argues Taylor is "ineligible to naturalize because

4  he committed unlawful acts that adversely reflect upon his good moral character and provided

5  false testimony to obtain and immigration benefit." (Id. at 24.) Taylor does not reply to these

6  allegations.

7  **Analysis**

8  I.      Summary Judgment Standard

9  Summary judgment is warranted if no material issue of fact exists for trial.  Warren v.

10  City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).  The

11  underlying facts are viewed in the light most favorable to the party opposing the motion.

12  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary

13  judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for

14  the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party

15  moving for summary judgment has the burden to show initially the absence of a genuine issue

16  concerning any material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  If the

17  moving party makes this showing, the burden shifts to the nonmoving party to establish the

18  existence of an issue of fact regarding an element essential to that party's case, and on which that

19  party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24

20  (1986).  To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead

21  must have evidence showing that there is a genuine issue for trial.  Id. at 324.

22

23

24

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT- 5

II.      Review under 8 U.S.C. § 1421(c)

"A person whose application for naturalization under [8 U.S.C. §1421] is denied . . . may seek review of such denial before the United States district court[.] Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c). "Judicial review of naturalization denials  . . . is not limited to any administrative record but rather may [include] facts established in and found by the district court de novo." Aparicio v. Blakeway, 302 F.3d 437, 445 (5th Cir. 2002).

"To be eligible for naturalization, an applicant must establish, among other things, good moral character." Atella v. U.S. Citizenship & Immigration Servs., 541 Fed. Appx. 760, 761 (9th Cir. 2013.) "A finding of good moral character is a question of fact." Id. (Internal citations omitted). "An applicant for naturalization bears the burden of demonstrating, during the statutorily proscribed period, he or she has been and continues to be a person of good moral character." 8 C.F.R. § 316.10(a)(1). In assessing good moral character, the Court "may take into consideration . . . the applicant's conduct and acts at any time prior to [the statutory period], if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character." 8 C.F.R. § 316.10(a)(2). An applicant shall be found to lack good moral character if, during the statutory period, the applicant has given false testimony to obtain an immigration benefit, regardless of whether the testimony was material. 8 C.F.R. § 316.10(b)(ii)(2)(vi).

The Government alleges Taylor provided false testimony at his pretrial deposition in this case, and at his initial naturalization interview. (Dkt. No. 70 at 3.) Taylor did not reply to these

1  allegations. The Ninth Circuit explicitly expressed "no opinion regarding the merits of Taylor's

2  naturalization application . . . and whether Taylor demonstrates good moral character under 8

3  C.F.R. § 316.10(a)(2).  (Dkt. No. 41 at 6, n.3.) The Government raises factual questions related

4  to Taylor's good moral character, Taylor has the burden of proof on this element, and Taylor

5  does nothing to refute the Government's allegations or demonstrate that they do not create a

6  factual issue.  Taylor's good moral character is a disputed issue of material fact, and summary

7  judgment is inappropriate on this record.

8                                          **Conclusion**

9           Questions of material fact as to Taylor's good moral character remain in this case, and

10 summary judgment is inappropriate. The motion for summary judgment is DENIED.

11          The clerk is ordered to provide copies of this order to all counsel.

12          Dated this 25th day of July, 2014.

13

14

15

Marsha J. Pechman
16                                          Chief United States District Judge

17

18

19

20

21

22

23

24

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT- 7